# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE, | CIVIL NO.  5:17-CV-0787 (GTS/ATB) |
| Plaintiff, | |
| v. | |
| SYRACUSE UNIVERSITY, | OPPOSITION TO MOTION TO DISMISS |
| Defendant. | |

Plaintiff John Doe, respectfully submits this Opposition to the Motion to Dismiss the Complaint by Defendant Syracuse University ("Syracuse").

**TABLE OF CONTENTS**

FACTS ........................................................................................................................... 1

    A.    Syracuse's Crackdown Amid Public and OCR Pressure ....................................... 1

    B.    The Syracuse Policies .......................................................................................... 2

    C.    The Fall 2016 Incident And Syracuse's Disciplinary Actions Against John Doe ................... 3

ARGUMENT ................................................................................................................. 4

    A.    Standard ............................................................................................................... 4

    B.    Judicial Deference Is Not Warranted ................................................................... 5

    B.    Title IX ................................................................................................................ 8

        1.    Selective Enforcement .......................................................................... 8

        2.    Erroneous Outcome ........................................................................... 10

    C.    Article 78 ........................................................................................................... 15

    D.    Breach of Contract and Promissory Estoppel .................................................. 17

        1.    Lack Of Notice ................................................................................... 18

        2.    Lack Of Full And Fair Investigation .................................................. 19

        3.    Lack Of Fundamental Fairness .......................................................... 20

    E.    Negligence ......................................................................................................... 24

CONCLUSION ............................................................................................................ 25

## TABLE OF AUTHORITIES

### CASES

*A.W. v. Lancaster Cnty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010)....................................24

*Alexson v. Hudson Valley Cmty. Coll.*, 125 F.Supp.2d 27 (N.D.N.Y. 2000) ...............................................16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................................5

*Atria v. Vanderbilt Univ.*, 142 F.App'x 246 (6th Cir.2005) .........................................................................23

*Basile v Albany Coll. of Pharm. of Union Univ.*, 279 AD2d 770, 719 N.Y.S.2d 199 (3d Dept. 2001).......21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................................5

*Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78 (1978) ..........................................5

*Boeve v. Nationwide Mut. Ins. Co.*, E.D.Mich. No. 08-CV-12213, 2008 U.S. Dist. LEXIS 63575
 (Aug. 20, 2008)...................................................................................................................................24

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002).....................................................................5

*Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 151 N.E.2d 833,
 176 N.Y.S.2d 259 (1958) ...................................................................................................................24

*Clark v. Trustees of Columbia Univ.*, No. 95 Civ. 10627 (PKL), 1996 W.L. 609271
 (S.D. N.Y. Oct. 23, 1996).....................................................................................................................16

*Clark-Fitzpatrick v. Long Island R.R. Co.*, 70 N.Y.2d 382, 516 N.E.2d 190, 521 N.Y.S.2d 653
 (1987).................................................................................................................................................24

*Collick v. William Paterson Univ.*, D.N.J. No. 16-471, 2016 U.S. Dist. LEXIS 160359
 (Nov. 17, 2016) ...........................................................................................................................8, 21

*Curto v. Smith*, 248 F. Supp. 2d 132 (N.D.N.Y. 2003)................................................................................8

*Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999) .....................................................................5

*Dempsey v. Bucknell Univ.*, Civil Action No. 4:11-cv-1679, 2012 U.S. Dist. LEXIS 62043, at *18-*19
 (M.D. Pa. May 3, 2012)........................................................................................................................22

*Doe v. Amherst College*, 238 F.Supp.3d 195, 216 (D.Mass. 2017) ......................................................7, 10

*Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 600 (D.Mass.2016).....................................................8, 12, 22

*Doe v. Brown Univ.*, 166 F. Supp. 3d 177 (D.R.I. 2016) ...........................................................................14

*Doe v. Brown Univ.*, 210 F. Supp. 3d 310 (D.R.I. 2016) ........................................................................5, 22

*Doe v. Case W. Reserve Univ.*, N.D. Ohio No. 1:14CV2044, 2015 U.S. Dist. LEXIS 123680
 (Sept. 16, 2015) .............................................................................................................................15, 20

*Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016)............................................................................*passim*

*Doe v. Lynn Univ., Inc.*, S.D.Fla. No. 9:16-CV-80850, 2017 U.S. Dist. LEXIS 7529
 (Jan. 19, 2017) ....................................................................................................................................8

*Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048 (S.D.Ohio 2017) .............................................................13

*Doe v. Ohio State Univ.*, S.D. Ohio No. 2:15-cv-2996, 2016 U.S. Dist. LEXIS 7700

(Jan. 22, 2016) ........................................................................................................ 12

*Doe v. Trustees of the Univ. of Pennsylvania*, E.D.Pa. No. 16-5088, 2017 U.S. Dist. LEXIS 148086
(Sep. 13, 2017) ................................................................................................. 19, 24

*Doe v. Univ. of Cincinnati*, 6th Cir. No. 16-4693, 2017 U.S. App. LEXIS 18458 (Sep. 25, 2017) ......... 21

*Doe v. Univ. of Notre Dame*, N.D.Ind. No. 3:17CV298, 2017 U.S. Dist. LEXIS 69645
(May 8, 2017) ........................................................................................................ 19

*Doe v. Wash. & Lee Univ.*, W.D.Va. No. 6:14-cv-00052, 2015 U.S. Dist. LEXIS 102426
(Aug. 5, 2015) ....................................................................................................... 13

*Evans v. Columbia Univ.*, S.D.N.Y. No. 14-cv-2658 (NSR), 2015 U.S. Dist. LEXIS 48768
(Apr. 13, 2015) ...................................................................................................... 21

*Fletcher v. S. Peninsula Hosp.*, 71 P.3d 833 (Alaska 2003) .......................................................... 25

*Gally v. Columbia Univ.*, 22 F. Supp. 2d 199 (S.D.N.Y. 1998) ............................................... 16, 17

*Habitzreuther v. Cornell Univ.*, N.D.N.Y. No. 5:14-cv-1229, 2015 U.S. Dist. LEXIS 112209
(Aug. 25, 2015) ...................................................................................................... 15

*Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897 (2d Cir. 1980) .................................................... 24

*Hospitals Gess v. United States*, 952 F.Supp. 1529 (M.D.Ala.1996) ........................................... 25

*Johnson v. Bon-Ton Dep't Stores, Inc.*, 278 F.App'x 56 (2d Cir. 2008) ....................................... 25

*Jones v. Trustees of Union College*, 92 A.D.3d 997, 937 N.Y.S.2d 475 (3d Dept. 2012) ............................ 17

*Keles v. Manhattan College Corp.*, S.D.N.Y. No. 88 Civ. 8080, 1993 U.S. Dist. LEXIS 11696
(Aug. 20, 1993) ...................................................................................................... 17

*Mallory v. Ohio Univ.*, 76 F.App'x 634, 641 (6th Cir.2003) ....................................................... 9

*Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92, 699 N.Y.S.2d 716, 721 N.E.2d 966 (1999) .............................. 5

*Naumov v. McDaniel College, Inc.*, D.Md. No. GJH-15-482, 2017 U.S. Dist. LEXIS 49887
(Mar. 31, 2017) ................................................................................................... 8, 23

*Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 402 N.E.2d 1150, 426 N.Y.S.2d 248, 251 (1980) .......... 21

*Papaspiridakos v. Educ. Affiliates, Inc.*, E.D.N.Y. No. 10 CV 5628, 2013 U.S. Dist. LEXIS
129748 (Sep. 11, 2013) ...................................................................................... 15, 16, 17

*Papelino v. Albany College of Pharm. of Union Univ.*, 633 F.3d 81 (2d Cir. 2011) ............................ 5

*Pell v. Trustees of Columbia Univ.*, S.D.N.Y. No. 97 Civ. 0193, 1998 U.S. Dist. LEXIS 407
(Jan. 21, 1998) ...................................................................................................... 17

*Rensselaer Socy. of Engrs. v Rensselaer Polytechnic Inst.*, 260 AD2d 992, 689 N.Y.S.2d 292
(3d Dept. 1999) ..................................................................................................... 21

*Rolph v. Hobart & William Smith Colls.*, W.D.N.Y. No. 6:16-CV-06515 EAW, 2017 U.S. Dist.
LEXIS 153838 (Sep. 20, 2017) ...................................................................... 7, 13, 14, 16

*Routh v. Univ. of Rochester*, 981 F.Supp.2d 184 (W.D.N.Y.2013) ............................................... 17

*Sheppard v. Beerman,* 18 F.3d 147 (2d Cir. 1994) ............................................................... 5

*United States ex rel. Diop v. Wayne Cnty. Cmty. Coll. Dist.,* 242 F.Supp.2d 497 (E.D.Mich.2003) ............ 25

*Vanden Bosch v. Bayer Healthcare Pharms., Inc.,* 13 F. Supp. 3d 730 (W.D.Ky.2014) ................................. 24

*Ward v. N.Y. Univ.,* S.D.N.Y. 99 Civ. 8733, 2000 U.S. Dist. LEXIS 14067 (Sep. 25, 2000) ............... 17

*Wells v. Xavier Univ.,* 7 F. Supp. 3d 746 (S.D.Ohio 2014) ......................................................... 14

*Yu v. Vassar Coll.,* 97 F. Supp. 3d 448 (S.D.N.Y. 2015) ..................................................... 17, 25

*Yusuf v. Vassar Coll.,* 35 F.3d 709 (2d Cir. 1994) ................................................................ 8, 10

## OTHER AUTHORITIES

72 Fed. Reg. 3432 ................................................................................................................ 6

20 USCS § 1099b et seq .......................................................................................................... 25

34 C.F.R. § 106.8 ................................................................................................................... 6

34 C.F.R. Part 106 ................................................................................................................. 8

Letter from Office for Civil Rights, U.S. Dep't of Educ, (Apr. 4, 2011)
(the "Dear Colleague Letter") ......................................................................................... 6, 7

N.Y. C.P.L.R §7800 *et seq* .................................................................................................. 15, 17

Open Letter From Members Of The Penn Law School Faculty:  Sexual Assault Complaints:
Protecting Complainants And The Accused Students At Universities, Feb. 8, 2015 ........................ 7

Rethink Harvard's Sexual Harassment Policy, Boston Globe (Oct. 15, 2014) ....................................... 7

## FACTS

**A.      Syracuse's Crackdown Amid Public and OCR Pressure**

In recent years, and during the period preceding the disciplinary actions against John Doe, there was substantial criticism of Syracuse, both in the student body and in the public media, accusing Syracuse of not taking seriously complaints of female students alleging sexual assault by male students. (Complaint ¶¶13-18.)   *Cf. Doe v. Columbia Univ.,* 831 F.3d 46, 57 (2d Cir. 2016)( during the period preceding the disciplinary hearing, there was substantial criticism of the University, both in the student body and in the public media, accusing the University of not taking seriously complaints of female students alleging sexual assault by male students").

In September 2014, students, faculty and staff gathered on the steps of Hendricks Chapel at Syracuse to protest the university's changes to sexual assault policies.  An organization called "THE General Body," a collective of student organizations, spent close to three weeks occupying the Syracuse administration building.  Among the demands from THE General Body were an increase in attention to the issue of sexual assault.  (Complaint ¶13(c).)  In December 2014, Syracuse received a report from the Chancellor's Workgroup on Sexual Violence Prevention, Education, and Advocacy. The report observed that much of the focus of preventing sexual assault at Syracuse is the prevention of acts by males.  The report says, "The discourse on campus about sexual assault and relationship violence typically focuses on male-on-female violence involving students who are fulltime undergraduates, White, and heterosexual."  (Complaint ¶14.) In July 2015, New York State Gov. Andrew Cuomo signed into law the "Enough is Enough" legislation to combat sexual assault on college campuses.  Syracuse Chancellor Kent Syverud adopted the "Enough is Enough" legislation in summer 2015, making him the first private college chancellor or president to do so.  (Complaint ¶ 15.)

Syracuse received national attention as a result of a September 2015 CNBC report titled, "One of the most dangerous places for women in America."  (Complaint ¶16.)  In 2016, Syracuse responded

to some of the criticism that it was not taking the problem of sexual assaults on campus seriously. One Syracuse Dean responded to allegations that Syracuse was not taking the issue seriously by stating, "the university has expelled and suspended students and put students on probation for sexual misconduct." (Complaint ¶17(b).)   In October 2016, Syracuse students dragged mattresses covered with messages in red tape to protest rape culture on campus.  The protesters described Syracuse as an "institution that lets perpetrators walk free while survivors, activists, and our families must bear the injustice silently."

Syracuse has been the subject of *at least two* investigations by the Department of Education, Office of Civil Rights ("OCR"), into how the school responded to allegations of sexual assault. On June 22, 2016 OCR notified Syracuse that OCR was investigating an allegation that Syracuse failed to respond "promptly and equitably" to a "report of sexual assault."  OCR Docket # 02-16-2168.  On January 17, 2017, OCR notified Syracuse that OCR was investigating a second allegation that Syracuse failed to respond "promptly and equitably" to a "report of sexual assault."  OCR Docket # 02-16-2323.  Officials from OCR were scheduled to visit Syracuse on January 24, 2017. According to the news report in response to this visit, Syracuse administration officials sought to emphasize their actions in this area to appease OCR. (Complaint ¶20.)

## B.    The Syracuse Policies

The Syracuse Student Conduct System Handbook includes the "Student Conduct System Handbook."  (A copy of the Student Conduct System Handbook is attached to the Complaint as Exhibit A.) The Student Conduct System Handbook also contains a section entitled "Syracuse University Policy On Sexual Assault, Sexual Harassment, Stalking Or Relationship Violence (the "Sexual Misconduct Policy.").   The Sexual Misconduct Policy prohibits, *inter alia* harassment, sexual assault, and relationship violence.

The Sexual Misconduct Policy contains a section referred to as the "Bill of Rights." Under this section, Syracuse students have the right to "participate in a process that is fair, impartial, and provides adequate notice and meaningful opportunity to be heard." (Complaint ¶26(a).) The Student Conduct System Handbook explicitly guarantees "Fundamental Fairness" to students.[1] (Complaint ¶32.)

Complaints alleging violations of the Sexual Misconduct Policy are made to the Syracuse Title IX Coordinator. Upon the receipt of a complaint, the Title IX Coordinator will designate an investigator who may conduct an investigation. Once the investigation report is complete, both the respondent and the complainant will be given the opportunity to review the report and provide a written response. Allegations of sexual misconduct are adjudicated by a University Conduct Board comprised of trained faculty and staff members. Syracuse rules do not require a hearing. Instead, "the University Conduct Board may rely upon the investigator's report for its understanding of the relevant facts . . . The complainant and respondent will be invited to speak to the University Conduct Board to present any additional information that they believe is relevant to the case." The Board determines whether the respondent violated the Code of Student Conduct using the preponderance of the evidence standard. Appeals of decision of the hearing are considered by the University Appeals Board; however, grounds for appeals are strictly limited. (Complaint ¶31.)

## C.     The Fall 2016 Incident And Syracuse's Disciplinary Actions Against John Doe

John Doe was expelled from Syracuse for events that allegedly occurred in the early morning of September 14, 2016 (the "IncidentOn this day, John Doe engaged in sexual activity with another

---

[1] In addition to this explicit obligation, Syracuse has a duty under the accreditation standards to provide a disciplinary process that consistent with the liberal values of fairness and due process. The accreditation standards applied to the school require that Syracuse's "policies and procedures are fair and impartial, and assure that grievances are addressed promptly, appropriately, and equitably." *See* Middle States Commission on Higher Education, *Standards for Accreditation and Requirements of Affiliation*, Thirteenth Edition. (Complaint ¶33(b).)

Syracuse student, Jane Roe. ").  John Doe denies any misconduct during the Incident.  (Complaint ¶¶34-37.)

Jane Roe initially alleged only that John Doe caused her bodily injury during their sexual encounter. Jane Roe later alleged that she did not provide adequate consent because she was "incapacitated by alcohol intoxication."   (Complaint ¶36(c), 39(b)(iii).)  On October 12, 2016, John Doe was notified by the Assistant Dean/Director of the Office of Student Rights and Responsibilities that Jane Roe had submitted a complaint of misconduct.  Jane Roe did not initially believe that John Doe had committed sexual misconduct, but the investigators chose to examine "whether she gave effective, affirmative consent to engage in sexual intercourse."  An investigative report was completed on December 6, 2016.  The report included a "credibility assessment" suggesting that Jane Roe "presented as genuine and sincere" but that John Doe had "a natural bias, as a named respondent, to present information in a light most favorable to himself." (Complaint ¶39.)

The University Conduct Board had a hearing on January 20, 2017.  At the hearing John Doe was permitted to tell his side of the story, but never had an opportunity to confront adverse witnesses, including Jane Roe.  On January 26, 2017, John Doe was informed that the University Conduct Board had found him responsible for a violation of the Syracuse Code of Conduct. The University Conduct Board made a specific finding of fact that "*both parties* were intoxicated to the point where their judgment would be impacted." (Complaint ¶42 (emphasis supplied).) The University Conduct Board recommended that John Doe be expelled from the Syracuse.  On February 14, 2017 Syracuse denied John Doe's appeal and John Doe was expelled.  (Complaint ¶¶44-45.)  This litigation followed.

## ARGUMENT

### A.    Standard

On a Rule 12(b)(6) motion, this Court must accept all well-pleaded factual allegations of the Complaint as true and construe the complaint in the light most favorable to the plaintiffs. *See Chambers*

*v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir. 1994). The Complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" that is, "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## B.    Judicial Deference Is Not Warranted

Syracuse argues that school "disciplinary decisions must be afforded great deference."[2] Syracuse Memo. at 10. The deference sought by Syracuse is not appropriate in this case because Plaintiff has not asked the Court to "second guess" a school hearing panel. *Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 313 (D.R.I. 2016). The court in *Brown University*, when confronted by a similar argument by a school, explained:

> It is not the Court's role to . . . decide whether the Court would have, in the panel's position, found John [Doe] responsible for sexual misconduct; to evaluate whether the Court would have made the same judgment calls on evidence and other issues as [the school] did; or to determine whether the procedure John [Doe] received was optimal. This Court is not a super-appeals court for sexual misconduct cases, nor is it an advisor to [the school] on how it should handle these messy and unfortunate situations.

210 F. Supp. 3d at 313 (finding in favor of accused student). Like the plaintiff in *Brown University* case, Plaintiff is only asking this Court to determine whether the proceedings and discipline imposed by Syracuse was carried out in line with the Title IX and contractual obligations of the school.[3]

---

[2] The deference to schools has traditionally been seen regarding academic, and not disciplinary, matters. *See Board of Curators of University of Missouri v. Horowitz,* 435 U.S. 78, 86 (1978) (noting "the significant difference between the failure of a student to meet academic standards and the violation by a student of valid rules of conduct.").

[3] Syracuse cites a number of cases suggesting the schools should defer to school disciplinary decisions. Syracuse Memo. at 9-10, *citing Papelino v. Albany College of Pharm. of Union Univ.*, 633 F.3d 81 (2d Cir. 2011); *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629 (1999); *Maas v. Cornell Univ.*, 94 N.Y.2d 87, 92, 699 N.Y.S.2d 716, 721 N.E.2d 966 (1999). These cases do not suggest that there is no role for the courts in protecting Title IX and related claims against schools. Indeed, in one case relied upon by Syracuse, the court found that allegations involving sexual harassment created "one of those rare education cases where it is appropriate for a court to intervene." *Papelino* 633 F.3d at 94.

5

Syracuse acknowledges, as it must, that this case arises amidst a growing national controversy about the responses of colleges and universities to sexual assaults on campuses.  After years of criticism for being too lax on campus sexual assault, at the urging of OCR and other high-ranking officials in the Obama Administration, colleges and universities engaged in a crackdown on alleged perpetrators. On April 11, 2011, OCR sent a "Dear Colleague" letter to colleges and universities.  *See* Letter from Office for Civil Rights, U.S. Dep't of Educ. (Apr. 4, 2011) (the "Dear Colleague Letter").[4]  OCR regulations and guidance required that schools "adopt and publish grievance procedures providing for the prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited."  34 C.F.R. § 106.8(b).  Syracuse observes that its policies and procedures are intended to comply with "Title IX's strictures."  Syracuse Memo. at 6.  In fact, Syracuse explicitly acknowledges that Syracuse sought to comply with the Dear Colleague Letter. Syracuse Memo. at 2. The problem – and the reason Syracuse's efforts to comply with the Dear Colleague Letter are not entitled to the traditional deference provided to schools – is that the Dear Colleague Letter "was not adopted according to notice-and-comment rulemaking procedures; its extremely broad definition of 'sexual harassment' has no counterpart in federal civil rights case law; and the procedures prescribed for adjudication of sexual misconduct are heavily weighted in favor of finding guilt."  *Plummer v. Univ. of Houston*, 860 F.3d 767, 779-80 (5th Cir. 2017) (Jones, J., dissenting).

On September 22, 2017, the Department of Education withdrew the Dear Colleague Letter and indicated its intent to issue new guidance "through a rulemaking process that responds to public

---

[4]Available at http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf.  The Dear Colleague Letter is a "significant guidance document," as defined by the Office of Management and Budget's Final Bulletin for Agency Good Guidance Practices. *See* Dear Colleague Letter at 1 n. 1; 72 Fed. Reg. 3432.  It did "not add requirements to applicable law, but provide[d] information and examples to inform recipients about how [the Office for Civil Rights] evaluate[d] whether covered entities [were] complying with their legal obligations." Dear Colleague Letter at 1 n.l.

comment." Letter from Office for Civil Rights, U.S. Dep't of Educ. (September 22, 2017).[5]   In

withdrawing the Dear Colleague Letter, OCR might have been describing Syracuse's actions in this

case: prior actions "may have been well-intentioned, but . . . led to the deprivation of rights for many

students—both accused students denied fair process and victims denied an adequate resolution of

their complaints."  *Id.* at 1-2.  OCR further said:

> Legal commentators have criticized the 2011 Letter . . . for placing "improper pressure
> upon universities to adopt procedures that do not afford fundamental fairness." As a
> result, many schools have established procedures for resolving allegations that "lack
> the most basic elements of fairness and due process, are overwhelmingly stacked
> against the accused, and are in no way required by Title IX law or regulation."

*Id.* at 1, *quoting Open Letter From Members Of The Penn Law School Faculty:  Sexual Assault Complaints:*

*Protecting Complainants And The Accused Students At Universities*, Feb. 8, 2015; *Rethink Harvard's Sexual*

*Harassment Policy*, Boston Globe (Oct. 15, 2014) (statement of 28 members of the Harvard Law School

faculty).

Federal courts have not, as Syracuse suggests, simply deferred to school officials in similar

situations.  Several recent lawsuits against private schools challenging Title IX procedures have

survived preliminary motions as federal courts expressed concern about the discriminatory actions of

schools and/or the failure of schools to comply with their own procedures.  *See e.g Rolph v. Hobart &*

*William Smith Colls.,* W.D.N.Y. No. 6:16-CV-06515 EAW, 2017 U.S. Dist. LEXIS 153838, *34 (Sep.

20, 2017) (denying motion to dismiss Title IX claim because "plaintiff has adequately alleged facts that

plausibly support at least a minimal inference of gender bias on the part of" school); *Brown Univ.*, *supra*

(denying motion to dismiss breach of contract claim based on alleged "pressure [from OCR] on

universities"); *Doe v. Amherst College*, 238 F.Supp.3d 195, 216 (D.Mass. 2017) (denying motion for

judgment on pleadings for breach of contract for school policies enacted due to OCR pressure);

_____

[5]Available at https://www2.ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf.

*Naumov v. McDaniel College, Inc.*, D.Md. No. GJH-15-482, 2017 U.S. Dist. LEXIS 49887, at *29 (Mar. 31, 2017) (rejecting argument that Dear Colleague Letter required breach of college handbook); *Collick v. William Paterson Univ.*, D.N.J. No. 16-471, 2016 U.S. Dist. LEXIS 160359, at *69-70 (Nov. 17, 2016)("the Complaint sufficiently alleges that Defendants did not adhere to [the school's] own rules, that the procedure they followed was unfair, and that the decision was not based on sufficient evidence"); *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 600 (D.Mass.2016)("the Court concludes that the complaint plausibly alleges that [the school] did not provide 'basic fairness' to" accused student); *Doe v. Lynn Univ., Inc.*, S.D.Fla. No. 9:16-CV-80850, 2017 U.S. Dist. LEXIS 7529, at *17 (Jan. 19, 2017) (plaintiff stated valid claims for of contract and breach of the implied covenant of good faith and fear dealing in connection with sexual assault investigation).

**B.     Title IX**

The Plaintiff has asserted a valid claim against Syracuse based on Title IX, the federal statute designed to prevent sexual discrimination in educational institutions receiving federal funding. 20 U.S.C. § 1681 *et seq. See also* 34 C.F.R. Part 106 (Title IX implementing regulations).   The Second Circuit has recognized two categories of Title IX claims: (1) claims of an erroneous outcome from a flawed proceeding, and (2) claims of selective enforcement. *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714-16 (2d Cir. 1994).

**1.     Selective Enforcement**

A Title IX "selective enforcement" claim is based on the premise that "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Yusuf*, 35 F.3d at 715.  This can be shown by allegations that female students  "were treated more favorably in similar circumstances." *Curto v. Smith*, 248 F. Supp. 2d 132, 146-47 (N.D.N.Y. 2003).

8

Syracuse suggests that a selective enforcement claim "does not appear to be asserted. . . ." and that Plaintiff does not identify "similarly situated members of the opposite sex" who were treated differently.   Syracuse Memo. at 11.   This is incorrect.   The Complaint states a valid selective enforcement claim because the complaint contains evidence "that a female was in circumstances sufficiently similar to [plaintiff's] and was treated more favorably by the University."   *Mallory v. Ohio Univ.*, 76 F.App'x 634, 641 (6th Cir.2003).  The female in circumstances sufficiently similar to Plaintiff's is Jane Roe.  According to the Hearing Panel, Jane Roe and John Doe engaged in the exact same conduct which, if true, violated the Sexual Misconduct Policy: sexual activity with a person who was too intoxicated to provide consent.  Yet *only Plaintiff* faced discipline. The Complaint alleges:

> The Sexual Misconduct Policy ambiguously prohibits students from engaging in sexual intercourse with any other person that has consumed any amount of alcohol. However, in this instance, Syracuse applied this prohibition in a gender discriminatory manner
> a.  The Hearing Panel concluded that both John Doe and Jane Roe were too intoxicated to meaningfully consent to sexual activity. Even though both students engaged in sexual activity, only John Doe was subject to discipline.

(Complaint ¶55.)  The Complaint further describes how this disparate treatment of similarly situated persons was motivated by gender bias:

> Syracuse has, by imposing discipline only on John Doe when it believed both John Doe and Jane Roe were too intoxicated to engage in consensual sexual conduct, incorporated a chauvinistic view of men as "predators" and women as the "guardians" of virtue.
> i.  Syracuse's practices and procedures appear to not necessarily be hostile to men, but can be seen as biased in favor of unfairly protecting "vulnerable" and "virtuous" females.
> ii.  Although both John Doe and Jane Roe had been drinking, Syracuse identified John Doe as the initiator of sexual activity, notwithstanding the comparable intoxication of both participants.

(Complaint ¶55(c).) *See also infra.* (discussing gender bias by Syracuse under *Columbia* standard).

In other words, the Complaint states a valid selective enforcement claim because it identifies Jane Roe as a comparator of the opposite sex who was treated more favorably by the educational

9

institution. This case is similar to a recent decision in *Amherst College*, *supra*. In *Amherst College*, the court found sufficient allegations to survive a motion for judgment on the pleadings on a selective enforcement claim where, as in this case, there was allegations that both the male and female students in the case had engaged in sexual activity while intoxicated, yet only the male student was subject to discipline. The court observed:

> [Plaintiff] alleges the College took proactive steps to encourage [the female student] to file a formal complaint against [Plaintiff] when it learned he may have been subjected her to nonconsensual sexual activity. But, when the College learned [the female student] may have initiated sexual activity with [Plaintiff] while he was "blacked out," and thus incapable of consenting, the College did not encourage him to file a complaint, consider the information, or otherwise investigate.

238 F. Supp. 3d at 223.[6]

### 2. Erroneous Outcome

The key cases in evaluating Plaintiff's erroneous outcome claim are *Yusuf, supra.,* and *Doe v. Columbia Univ.*, *supra*. In *Yusuf*, the Second Circuit explained that in order to assert a claim based on an erroneous outcome theory the Plaintiff needs to allege that the hearing was flawed due to the Plaintiffs' gender. The key language from the decision addresses the allegations at the pleading stage:

> A plaintiff must . . . also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding. Allegations of a causal connection in the case of university disciplinary cases can be of the kind that are found in the familiar setting of Title VII cases. Such allegations might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender.

35 F.3d at 715 (citations omitted).

*Yusuf* was followed in *Columbia*. In *Columbia*, the Second Circuit reversed a decision of the district court dismissing a Title IX claim brought by a student who had been disciplined for an alleged

---

[6] *Routh v. Univ. of Rochester*, 981 F.Supp.2d 184, 216 (W.D.N.Y.2013), is not to the contrary. In that case, the court dismissed a claim by male that he was prevented from filing cross-complaint against female because "There is no indication that [plaintiff] availed himself of that opportunity." In contrast, in this case Syracuse *sua sponte* considered the intoxication issue without such a a complaint being lodged by either party.

sexual assault.  The complaint in *Columbia* alleged that the school was motivated "to refute criticisms circulating in the student body and in the public press that Columbia was turning a blind eye to female students' charges of sexual assaults by male students."  831 F.3d at 56. Among the Complaint's allegations that supported the inference of sex discrimination were that the investigator, the hearing panel, and the reviewing dean reached conclusions that were incorrect and contrary to the weight of the evidence. The Complaint further alleged that there had been "substantial criticism of the University, both in the student body and in the public media, accusing the University of not taking seriously complaints of female students alleging sexual assault by male students." 831 F.3d at 57. The court concluded:

> Against this factual background, it is entirely plausible that the University's decision-makers and its investigator were motivated to favor the accusing female over the accused male, so as to protect themselves and the University from accusations that they had failed to protect female students from sexual assault…

> The Complaint alleges that, having been severely criticized in the student body and in the public press for toleration of sexual assault of female students, Columbia was motivated in this instance to accept the female's accusation of sexual assault and reject the male's claim of consent, so as to show the student body and the public that the University is serious about protecting female students from sexual assault by male students—especially varsity athletes. There is nothing implausible or unreasonable about the Complaint's suggested inference that the panel adopted a biased stance in favor of the accusing female and against the defending male varsity athlete in order to avoid further fanning the criticisms that Columbia turned a blind eye to such assaults.

831 F.3d at 58.

The *Columbia* decision is precisely akin to the present case and, as binding precedent, compels this Court to deny the Motion to Dismiss.   In this case, the Complaint mirrors *Columbia* in alleging that, having been severely criticized in the student body and in the public press for toleration of sexual assault of female students, Syracuse was motivated to accept the female's accusation of sexual assault and reject the male's claim of consent, to appear to the student body and the public as though Syracuse was serious about protecting female students from sexual assault by male students.  (Complaint ¶¶50-51.)  The Complaint also describes how Syracuse, like Columbia, was under investigation by the

11

Department of Education at the time it was evaluating the claims against the Plaintiff.  (Complaint ¶¶19-21, 54(b).)

Syracuse questions the link between such pressure and discriminatory actions against Plaintiff. *See e.g.* Syracuse Memo. at 12 (suggesting "there is no fact alleged that would support a finding that these circumstances impacted the proceedings").  However, Syracuse ignores that in 2016, in response to some of the criticism that it was not taking the problem of sexual assaults on campus seriously, a member of the Syracuse administration said, "the university has expelled and suspended students and put students on probation for sexual misconduct." (Complaint ¶17(b).)  This language, by itself, puts this case precisely within the holdings of *Yusef* and *Clumbia*.  Moreover, there is nothing implausible or unreasonable about the Complaint's suggested inference that Syracuse's investigators and hearing panel adopted a biased stance in favor of the accusing female and against the defending male student to avoid further criticisms that Syracuse turned a blind eye to such assaults and to appear as though Syracuse is 'tough' on sexual assault. (Complaint ¶51.)  This is the essential holding of *Columbia*, 831 F.3d at 57-58.

Syracuse urges the Court to reject this linkage despite *Columbia*, suggesting the evidence of pressure is merely "gender –neutral and thus of no moment."  Syracuse Memo. at 12. However, the inference that schools were motivated by pressure from OCR is, in fact, a reasonable inference that other courts, in addition to *Columbia,* have, on a motion to dismiss standard, drawn.  In *Doe v. Ohio State Univ.*, a federal court observed that the failure of a school to comply with guidance by the Office of Civil Rights on Title IX "could jeopardize its federal funding."  *Doe v. Ohio State Univ.*, S.D. Ohio No. 2:15-cv-2996, 2016 U.S. Dist. LEXIS 7700, at *30 (Jan. 22, 2016).  In *Brandeis*, *supra*, a federal court refused to dismiss a lawsuit of a student who was disciplined for unwanted sexual conduct arising in the course of a dating relationship. The court noted that that the school had, in fact, adopted

procedures that "substantially impaired, if not eliminated, an accused student's right to a fair and impartial process" as a direct result of pressure from OCR.  The court said:

> When considering the issues presented in this case, it is impossible to ignore entirely the full context in which they arose. In recent years, universities across the United States have adopted procedural and substantive policies intended to make it easier for victims of sexual assault to make and prove their claims and for the schools to adopt punitive measures in response. That process has been substantially spurred by [OCR], which issued a "Dear Colleague" letter in 2011 demanding that universities do so or face a loss of federal funding.

177 F.Supp.3d at 572. And in *Doe v. Wash. & Lee Univ.* a federal court observed, "it is plausible that [the school] was under pressure to convict students accused of sexual assault in order to demonstrate that the school was in compliance with the OCR's guidance." *Doe v. Wash. & Lee Univ.*, W.D.Va. No. 6:14-cv-00052, 2015 U.S. Dist. LEXIS 102426, at *23-24 (Aug. 5, 2015).[7]

Two recent decisions post-*Columbia* are particularly instructive. *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048 (S.D.Ohio 2017) ("*Ohio State II*"); *Rolph , supra*.  In *Ohio State II*, as in this case, the Plaintiff suggested that there was a temporal connection between an OCR investigation of the school and the actions against the plaintiff.  The court denied a motion to dismiss, observing:

> There is little doubt that universities around the country have felt pressure to tighten the investigation and punishments in sexual misconduct cases because this is a very sensitive issue. However, there are genuine concerns raised in these cases and general publications regarding how universities are handling the investigations.

239 F. Supp. 3d at 1062.  In *Rolph*, a court in the Western District of New York applied *Columbia* to conclude that a male student had adequately alleged facts that plausibly support at least a minimal inference of gender bias on the part of the school.  As in this case, the school had been criticized in

---

[7] Syracuse suggests that bias against those accused of sexual assault is distinct from bias based on gender and that Syracuse merely is demonstrating "heightened awareness of sexual assault." Syracuse Memo. at 14. This argument carries no weight, as it was expressly rejected by the *Columbia* court.  2016 U.S. App. LEXIS 13773 at *30 n. 11 ("A defendant is not excused from liability for discrimination because the discriminatory motivation does not result from a discriminatory heart, but rather from a desire to avoid practical disadvantages that might result from unbiased action.").

the media for failing to take seriously female students' complaints of sexual assault by male students. And, as in this case, the school in *Rolph* "faced pressure from the federal government to take a hard stance on sexual assault on campus" both in terms of "OCR's threat to withhold federal funding from schools not in compliance" and the fact that the school was "under investigation for possibly violating rules aimed at preventing sexual harassment." This, the court concluded, when combined with allegations of unfairness in the proceeding, "met [the] low burden at the pleading stage" under *Columbia.* 2017 U.S. Dist. LEXIS 153838, at *38-39.

In this case, dismissal under a Rule 12(b)(6) standard is not appropriate because the Plaintiff has alleged what *Yusef* and *Columbia* require: numerous irregularities in the Syracuse procedures that raise articulable doubts about the accuracy of the outcome. In this respect, Plaintiff's case is analogous to *Brown Univ.*, *supra*. wherein a motion to dismiss the Title IX claim by a student expelled for an alleged sexual assault was denied. In *Brown Univ.,* the court examined the conflicting authority on this issue, but concluded that a complaint brought by a male student does not, on a 12(b)(6) standard, require "statistical evidence and/or data analysis that female students accused of sexual assault were treated differently." The court, in doing so, rejected Syracuse's position that the complaint should be dismissed because Plaintiff has not alleged "that parties complaining of sexual abuse are inevitably female, or that parties allegedly engaged in acts of sexual abuse inevitably are male." Syracuse Memo. at 13. The *Brown* court observed that "such a standard, is both practically impossible and inconsistent with the standard used in other discrimination contexts." *Id.* at *26. The *Brown* court also observed that "the best information for discerning whether alleged discrimination was based on the plaintiff's gender as opposed to his status as an accused student is generally in the possession of the defendant" and that "given the nonpublic nature of the underlying information, the type of evidence . . . is more akin to what would be required at summary judgment." *Id.* at *30. *Cf. Wells v. Xavier Univ.*, 7 F. Supp. 3d 746, 751 (S.D.Ohio 2014) (finding the plaintiff pleaded facts sufficient to cast doubts on the

accuracy of a disciplinary proceeding by alleging, inter alia, that the defendants rushed to judgment and failed to train the disciplinary hearing panel); *Doe v. Case W. Reserve Univ.*, No. 1:14CV2044, 2015 U.S. Dist. LEXIS 123680, at *5 (N.D. Ohio Sept. 16, 2015) (finding that the plaintiff pleaded facts sufficient to cast doubts on accuracy of a disciplinary proceeding outcome by alleging that the defendant, inter alia, did not allow the plaintiff to review that evidence and denied the plaintiff the opportunity to cross examine his accuser).

## C.   Article 78

Syracuse argues that plaintiff should have brought this claim as an Article 78 proceeding within four months of when the challenged decision became final.  Syracuse Memo. at 20, *citing* N.Y. C.P.L.R §7800 *et seq.*  However, Article 78 is not applicable to this case because the Plaintiff does not challenge, in bringing breach of contract or other state law claims, an internal administrative and academic determination of a school.  New York courts look to the relief sought by the plaintiff, and where the plaintiff seeks monetary damages, rather than to prohibit or compel an action, a breach of contract action may be cognizable. *Habitzreuther v. Cornell Univ.*, N.D.N.Y. No. 5:14-cv-1229, 2015 U.S. Dist. LEXIS 112209, at *9-11 (Aug. 25, 2015) (breach of contract claim against a school did not have to have been brought as Article 78 proceeding). *Papaspiridakos v. Educ. Affiliates, Inc.,* E.D.N.Y. No. 10 CV 5628, 2013 U.S. Dist. LEXIS 129748, at *6-7 (Sep. 11, 2013) (where a plaintiff does not seek to compel any action by a school, and instead seeks monetary damages for breach of contract and other state law claims, the action is not precluded by Article 78).[8] Furthermore, New York courts have held that "as a general matter, Article 78 proceedings are not the proper vehicle for the enforcement of

---

[8] The claims in *Papaspiridakos* were filed more than four months after the student's suspension.  2013 U.S. Dist. LEXIS 129748, at *5.  As a result, the claims would have been barred under the Article 78 statute of limitations.

private contractual rights." *Clark v. Trustees of Columbia Univ.*, No. 95 Civ. 10627 (PKL), 1996 W.L. 609271, at *2 (S.D. N.Y. Oct. 23, 1996).

The Plaintiff, in seeking damages for breach of contract and the other state law claims, references his suspension as a cause of his damages, but Article 78 does not apply because the Plaintiff does not directly challenge Syracuse' decision in this action.[9]  In this respect, this case tracks the decision in *Papaspiridakos* supra.  In *Papaspiridakos,* the plaintiff was a student who was suspended after he had a series of conflicts with a faculty member lead to his temporary suspension.  He brought a case in the Eastern District of New York for damages from breach of contract and other state law claims.  The court concluded that the breach of contract claim and other claims under New York law brought by a student were not precluded by Article 78.  The court observed that "while plaintiff's suspension may have been the impetus for this lawsuit, the fact that he was suspended does not preclude him from bringing a separate suit for breach of contract and [other state law claims]" 2013 U.S. Dist. LEXIS 129748, at *7, *citing Alexson v. Hudson Valley Cmty. Coll.*, 125 F.Supp.2d 27, 29 (N.D.N.Y. 2000) (permitting student to bring action for breach of contract and deceptive trade practices after his alleged expulsion).

Syracuse's argument based on the Article 78 statute of limitations was specifically rejected in *Rolph*, *supra,* and *Gally v. Columbia Univ.*, 22 F.Supp.2d 199 (S.D.N.Y.1998).  In *Rolph,* the court considered a case, like this case, where a student alleged Title IX and state law breach of contract and related claims.  The court rejected an identical Article 78 argument, finding that since injunctive relief is available through the Title IX claim, the state law claims would be construed as only permitting monetary damages and thus not subject to Article 78's time limitations.  2017 U.S. Dist. LEXIS 153838, at *45.  In *Gally,* the plaintiff filed a suit for breach of contract and related state law claims

---

[9] Injunctive relief may be obtained under the Title IX claim.  *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009).

over her dismissal from a dental school.  The school argued that the case should properly have been brought as a state court proceeding pursuant to Article 78, and, further, that under Article 78, plaintiff's claims would have been barred by a four-month statute of limitations.  22 F.Supp.2d at 205. The court rejected this argument.

> [P]laintiff seeks neither to compel nor to prohibit any action by defendants. Instead, plaintiff seeks monetary damages for injuries allegedly suffered as a result of defendants' breach of its contractual obligations. As such, plaintiff's action is properly before the Court, will not be converted to an Article 78 proceeding, and is not time-barred.

22 F.Supp.2d at 206 (citation omitted), *citing Pell v. Trustees of Columbia Univ.*, S.D.N.Y. No. 97 Civ. 0193, 1998 U.S. Dist. LEXIS 407 ( Jan. 21, 1998) (rejecting argument that student's suit against school for breach of contract had to brought in Article 78 proceeding); *Keles v. Manhattan College Corp.*, S.D.N.Y. No. 88 Civ. 8080, 1993 U.S. Dist. LEXIS 11696,  at *3 n.1 (Aug. 20, 1993) ("because the relief sought by plaintiff was money damages for an alleged breach of contract and not mandamus, Article 78 is not the exclusive remedy"), *aff'd*, 29 F.3d 622 (2d Cir. 1994).

## D.      Breach of Contract and Promissory Estoppel

"In New York, the relationship between a university and its students is contractual in nature." *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 481 (S.D.N.Y. 2015), *quoting Papaspiridakos*, 2013 U.S. Dist. LEXIS 129748, at *3.  New York courts have observed that when a disciplinary dispute arises between the student and the institution, judicial review of the institution's actions is limited to whether the institution acted arbitrarily or whether it substantially complied with its own rules and regulations. *Jones v. Trustees of Union College*, 92 A.D.3d 997, 998-999, 937 N.Y.S.2d 475, 477 (3d Dept. 2012); *Routh*, 981 F.Supp.2d at  208.

A complaint for breach of contract must identify "a specific breached promise or obligation." *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998). *See also Ward v. N.Y. Univ.*, S.D.N.Y. 99 Civ. 8733, 2000 U.S. Dist. LEXIS 14067 at *4 (Sep. 25, 2000) (in order to state a claim for breach

17

of such a contract, a student must identify "specifically designated and discrete promises."). Syracuse, correctly citing this law, argues:

> [T]he Complaint does not identify a single specific provision of the Syracuse Policy or the Syracuse Procedures that was not followed or substantially complied with in the conduct of the investigation, the disciplinary hearing[,] or the internal appeal involving John Doe.

Syracuse Memo. at 22. Syracuse is incorrect on the application of this law. As shown below, Plaintiff has identified, in a non-conclusory manner, at least three separate ways in which Syracuse violated the express guarantees of the Student Handbook.

### 1.      Lack Of Notice

The Student Conduct System Handbook contains a specific guarantee to provide notice of alleged misconduct to students prior to any hearing. The Student Conduct System Handbook provides: "Students have the right to written notice." (Complaint ¶68(a).)   This is also specifically described elsewhere in the Student Conduct System Handbook: "All Students have the right to . . . Participate in a process that . . . is fair, impartial, *and provides adequate notice* and meaningful opportunity to be heard." (Complaint ¶ 26(a)(emphasis supplied). *See also* Complaint ¶¶ 65, 68.)

On October 12, 2016, John Doe was notified by the Assistant Dean/Director of the Office of Student Rights and Responsibilities that Jane Roe had submitted a complaint. (Complaint ¶38.) John Doe was told by Syracuse that a "complaint of relationship violence" had been filed by Jane Roe against John Doe. (Complaint ¶68(a)(i).) He was *not told* that the allegation included sexual misconduct, and specifically he was *not told* that the allegation included engaging with sexual activity with a person who was too intoxicated to consent. Courts have found that allegations of such misleading or vague notice by schools can support a breach of contract claim. In *Brandeis*, the court warned that a student should not be "expected to defend himself against [a] vague and open-ended charge." 177 F. Supp. 3d at 603. The court observed that such vague notice is insufficient: "There is little practical difference between a school failing to inform the accused of the charge against him or .

. . having informed him of the formal charge, refusing to provide him with the specific factual conduct alleged to have given rise to the charge." *Id.* The court in *Doe v. Univ. of Notre Dame*, N.D.Ind. No. 3:17CV298, 2017 U.S. Dist. LEXIS 69645 (May 8, 2017), went further, noting that even providing the student with access to the investigative report detailing alleged misconduct still does not constitute adequate notice. In *Notre Dame, supra*, the court observed that a detailed report including witness statements does "not provide [the student] John with a statement of the particular conduct alleged to have been a violation of particular" policies.[10] 2017 U.S. Dist. LEXIS 69645 at *29.

### 2.   Lack Of Full And Fair Investigation

The Student Conduct System Handbook contains a guarantee to conduct an investigation of the claims against John Doe. This is specifically described in the Student Conduct System Handbook: "Upon the receipt of a complaint, the Title IX Coordinator will designate an investigator who may conduct an investigation."  (Complaint ¶68(c).) The obligation to conduct an investigation must be read in conjunctions with other guarantees that this be a "full and fair" investigation; otherwise the contractual guarantee is meaningless.

A similar breach of contract claims based on the failure to conduct an adequate investigation survived a motion to dismiss in *Doe v. Trustees of the Univ. of Pennsylvania*, E.D.Pa. No. 16-5088, 2017 U.S. Dist. LEXIS 148086 (Sep. 13, 2017) and *Amherst, supra*. The parallels between these cases and this case are striking.  In this case, Plaintiff alleges, among other failings in the investigation: "The

---

[10] Plaintiff acknowledges that by the time of hearing, Nokes was "aware" that intoxication was an issue. But "awareness" is not "adequate notice."*Cf. Rankin v. Spirit Found., Inc.,* W.D.Mo. Case No. 89-5049-CV-SW-1, 1989 U.S. Dist. LEXIS 13683, at *13 (Nov. 13, 1989) ("awareness" by creditor of a bankruptcy did "not constitute timely, complete and, therefore, adequate, notice"); *Doody v. Town of N. Branford*, 972 F.Supp.2d 281, 289 (D.Conn.2013) ("general awareness . . . is no substitute for adequate notice").

investigator failed to conduct follow-up interviews or gather relevant physical evidence or information." (Complaint ¶68(c)(iii).) In *Univ. of Pennsylvania*, the complaint alleged that the investigator, among other failings, failed to review documentation, physical evidence, and other relevant evidence. 2017 U.S. Dist. LEXIS 148086 at *25-26. The *Univ. of Pennsylvania*, like Syracuse, argued that a complaint failed to state a cognizable breach of contract claim based on investigative deficiencies. The court said, "We reject this argument, however, because the Complaint plainly alleges, and the contract requires, that the investigator must conduct a *thorough* investigation that includes witness interviews and a review of relevant evidence." 2017 U.S. Dist. LEXIS 148086 at *35 n. 10 (emphasis supplied). The court in *Amherst* reached the same conclusion. In *Amherst*, like in this case, a student alleged that the school had "obligated itself to conduct a fair investigation and fact-finding process, but did not do so." The court denied a motion to dismiss because the student had alleged sufficient facts, from which a court can plausibly infer the investigation and fact-finding process was inadequate. 238 F. Supp. 3d at 217-218. *See also Case W. Res. Univ.,* 2017 U.S. Dist. LEXIS 142002, at *28-29 (denying motion to dismiss complaint alleging that school, *inter alia,* failed to "perform a fair, thorough and non-discriminatory investigation").

### 3. Lack Of Fundamental Fairness

The Student Conduct System Hand Book contains a specific guarantee of fundamental fairness. The provision provides:

β. **FUNDAMENTAL FAIRNESS**

Students have the right to written notice and the opportunity for a hearing before any change in status is incurred for disciplinary reasons unless a significant threat to persons or property exists. Students have the right to fundamental fairness before formal disciplinary sanctions are imposed by the University for violations of the Code of Student Conduct--as provided in the published procedures of the University's Student Conduct System or other official University publications.

(Complaint ¶32.)  The same idea is repeated elsewhere.  The Sexual Misconduct Policy contains a section referred to as the "Bill of Rights."  Under this section, Syracuse students have the right to "participate in a process that is fair, impartial, and provides adequate notice and meaningful opportunity to be heard."[11]  (Complaint ¶26.)

The allegation of lack of fundamental fairness is best evaluated by considering the process as a whole.[12]  The complaint summarizes this claim as follows:

> The conduct of entire process treated John Doe as if he was guilty from the start, thereby tainting the investigative hearing process and violating the guarantees of fundamental fairness and a fair and impartial hearing.

(Complaint ¶69.)  Some courts have considered this allegation, alone, sufficient to state a breach of contract claim when a school has promised "fundamental fairness."  In *Collick, supra,* for example, a court denied a motion to dismiss where a student alleged that a school did not adhere to its own rules and "that the procedure they followed was unfair, and that the decision was not based on sufficient evidence."  2016 U.S. Dist. LEXIS 160359, at *70.

---

[11] Syracuse complains that Plaintiff has "not familiarized himself with governing New York law." Syracuse Memo. at 22. Syracuse ignores the fact that this aspect of the contract between the parties is consistent with long-established New York law holding that implicit in the contract between a school and a student is the requirement that the institution "act in good faith in its dealing with its students." *Evans v. Columbia Univ.*, S.D.N.Y. No. 14-cv-2658 (NSR), 2015 U.S. Dist. LEXIS 48768, at *10 (Apr. 13, 2015), *citing Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 402 N.E.2d 1150, 426 N.Y.S.2d 248, 251 (1980). Further, New York law provides that a private school's disciplinary determinations must not be arbitrary and capricious. *Basile v Albany Coll. of Pharm. of Union Univ.*, 279 AD2d 770, 719 N.Y.S.2d 199 (3d Dept. 2001); *Rensselaer Socy. of Engrs. v Rensselaer Polytechnic Inst.*, 260 AD2d 992, 689 N.Y.S.2d 292 (3d Dept. 1999).

[12] Some aspects of the Syracuse process are inherently unfair even when simply examined in isolation. For example, the Student Conduct Systems Handbook states:  "Students have the right to . . . the opportunity for a hearing before any change in status."  (Complaint ¶32.)  John Doe had a hearing, but the Complaint alleges that at the hearing "John Doe was prohibited from confronting his accuser." (Complaint ¶69(b).)  The Sixth Circuit recently observed that in "he said/she said" sexual assault matters, a school's "failure to provide any form of confrontation of the accuser made the proceeding . . . fundamentally unfair."  *Doe v. Univ. of Cincinnati*, 6th Cir. No. 16-4693, 2017 U.S. App. LEXIS 18458 at *2 (Sep. 25, 2017).

Syracuse criticizes the Complaint as containing "unfocused allegations 'at the 30,000 foot level.'" Syracuse Memo. at 22. Yet, other courts have taken precisely this holistic approach in evaluating whether school procedures and proceedings complied with a guarantee of fundamental fairness.[13] In *Brandeis*, *supra*, the court found a breach of contract claim survived a motion to dismiss "based on the entirety of the procedures employed by [the school], given the nature of the charges and the circumstances of the case." 177 F. Supp. 3d at 607. The court explained:

> [T]his was not a criminal proceeding, and Brandeis is not a governmental entity. Nonetheless, the stakes were very high. [Plaintiff] was charged with serious offenses that carry the potential for substantial public condemnation and disgrace. He was required to defend himself in what was essentially an inquisitorial proceeding that plausibly failed to provide him with a fair and reasonable opportunity to be informed of the charges and to present an adequate defense. He was ultimately found "responsible," and received a penalty that may permanently scar his life and career. Under the circumstances, the complaint plausibly alleges that the procedures employed by [the school] did not provide him with the "basic fairness" to which he was entitled.

177 F. Supp. 3d at 607.

Other district courts have reached a similar result. In *Brown Univ.*, *supra*, the court denied a motion to dismiss where a student sufficiently stated a breach of contract claim for adjudication of sexual assault against the university. The court found that the Complaint had adequately alleged a number of violations of the student handbook "with respect to several . . . breaches of Doe's rights as an accused student." *Id.* at *36. Similarly, in *Dempsey v. Bucknell Univ.*, Civil Action No. 4:11-cv-1679, 2012 U.S. Dist. LEXIS 62043, at *18-*19 (M.D. Pa. May 3, 2012), the court found that the plaintiff had stated a claim for breach of contract based on a student handbook. In that case, the plaintiff alleged the school acted in a manner that was fundamentally unfair in a number of respects, including withholding relevant information from a plaintiff's attorney and failing to keep required records. The *Dempsey* court denied a 12(b)(6) motion: "[a]ccepting the allegations of Plaintiff's complaint as true,

---

[13] Syracuse, notably, fails to offer an alternative method of analyzing the specific contractual guarantee of "fundamental fairness."

Plaintiff's have alleged sufficient facts to support a finding that the school had breached the student handbook . . ." *Id.* at *19.  *See also Atria v. Vanderbilt Univ.*, 142 F.App'x 246, 254-255 (6th Cir.2005) (a student's allegations of violations of a student handbook were sufficient to survive a motion for summary judgment).

The Complaint alleges, in detail as required by *Twombly-Iqbal*, that Syracuse failed to comply with its express and implied contractual obligation to provide a fundamentally fair system.  Syracuse's basic response is: our process was fair because "we did what we were required to do" by New York law and/or federal guidance.[14]  *See e.g.* Syracuse Memo. at 23 (suggesting procedures are consistent with "Enough is Enough" law).  This does not get Syracuse very far, as many of these laws and guidance have been withdrawn or modified after having been shown to undermine the rights of accused students.  *See supra* (discussing withdrawal of Dear Colleague Letter).  Moreover, one court has observed that the requirements of the Dear Colleague Letter cannot supersede the terms of the contract between the parties.  "There are certainly clear statements of policy in the Dear Colleague Letter" the court said, but cautioned "It is not for the Court to invalidate a contract between the parties based on its sense of public policy, where, as here, the correct application of that public policy to the particular circumstances of the case is not clear."  *Naumov* , 2017 U.S. Dist. LEXIS 49887 at *30.  Finally, this argument fails because it seeks to explaint *why* Syracuse breached its contract.  To the extent that this is a legitimate defense, consideration of this argument is improper at a motion to dismiss stage.   Much of the information to support Syracuse's actual motives for its actions remains in the possession of Syracuse and is not available to Plaintiff, this is an argument that can only be evaluated on a summary judgment standard following discovery. *Cf. Trustees of the Univ. of Pennsylvania,*

---

[14] Syracuse, for example, suggests that Plaintiff "never comes to grip with the fact that the Syracuse Policy and Procedures" are written in gender neutral terms.  Syracuse Memo. at 23.  This is a puzzling argument, as it would be shocking to find such an admission. University administrators are too smart to make such a mistake. As a result, as in almost all discrimination cases, bias must be inferred.

2017 U.S. Dist. LEXIS 148086, at *53 (denying motion to dismiss and permitting discovery because information is undeniably within the University's exclusive control"). *See e.g. Vanden Bosch v. Bayer Healthcare Pharms., Inc.*, 13 F. Supp. 3d 730, 749 (W.D.Ky.2014) (denying motion to dismiss breach of contract claim; observing that claims "will be better fleshed out at the summary judgment stage"); *Boeve v. Nationwide Mut. Ins. Co.*, E.D.Mich. No. 08-CV-12213, 2008 U.S. Dist. LEXIS 63575, at *19 (Aug. 20, 2008) (denying motion to dismiss breach of contract and unjust enrichment claims "in deference to further discovery").

**E.   Negligence**

Syracuse argues that the Negligence claim should be dismissed because it is duplicative of the breach of contract claims.  Syracuse Memo. at 24.  This is incorrect.  The Complaint alleges that the obligation of Syracuse to conduct an investigation and adjudicatory process in a non-negligent manner is derived form an independent source:  the accreditation standards applicable to the schools.[15] (Comp. ¶74.)  Syracuse fails to address this aspect of the complaint.  Under New York law, a party may bring both a breach of contract and a tort claim where there is a legal duty independent of the contract itself that has been violated. *See, e.g., Clark-Fitzpatrick v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987).  Such a legal duty must, like in this case, "spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent on the contract." *Id.*   Accordingly, Plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct when an independent tort duty is identified. *See Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 898-99 (2d Cir. 1980), *citing Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 408, 151 N.E.2d 833, 176 N.Y.S.2d 259 (1958).

---

[15] State Courts have found that accreditation standards for school may be evidence of the relevant standard of care for schools and whether the standard of care was breached. *See e.g. A.W. v. Lancaster Cnty. Sch. Dist. 0001*, 280 Neb. 205, 222, 784 N.W.2d 907 (2010).

In this case, the Complaint alleges an independent tort duty imposed by the accreditation obligations of the Middle States Commission on Higher Education.[16]  *See* 20 USCS § 1099b et seq (establishing role of accreditation agencies for higher education funding); *United States ex rel. Diop v. Wayne Cnty. Cmty. Coll. Dist.,* 242 F.Supp.2d 497, 524-525 (E.D.Mich.2003) (observing that federal law and regulations "contemplates delegating the task of insuring the education viability of institutions of higher education to private accreditation agencies").   While New York does not appear to have addressed this issue,[17] the failure of Syracuse to comply with the independent obligation imposed by accreditation agencies constitutes a valid claim for negligence in other states.  *Cf.   Hospitals Gess v. United States*, 952 F.Supp. 1529, 1552 (M.D.Ala.1996) (finding negligence from failure of hospital to comply with standards from "Joint Commission of Accreditation"). *Fletcher v. S. Peninsula Hosp.*, 71 P.3d 833, 837 (Alaska 2003) (defendant hospital "voluntarily assumed a broader duty by seeking accreditation").

## CONCLUSION

The Motion to Dismiss should be denied.

---

[16] *Yu v. Vassar College*, 97 F. Supp. 3d 448, 484 (S.D.N.Y.2015), is distinguishable on this ground.  The *Yu* court considered the general existence of an obligation to not conduct an investigation in a negligent fashion; the court did not consider whether such an obligation could be imposed by an external accreditation body.

[17] Perhaps: *Johnson v. Bon-Ton Dep't Stores, Inc.*, 278 F.App'x 56, 58 (2d Cir. 2008) (referring to failure of elevator operator to comply with an industry standard, promulgated by the American Society of Mechanical Engineers and accredited by the American National Standards Institute").

Respectfully submitted,

_____/s/ Joshua Engel_____
Catherine H. Josh, Esq. ((5025036)
45 Exchange Boulevard, Suite 915
Rochester, NY 14614
585-423-1974
585-325-6075 (fax)
chjesq@gmail.com

Joshua Adam Engel (Ohio No. 0075769)
(*pro hac vice*)
ENGEL AND MARTIN, LLC
5181 Natorp Blvd., Suite 210
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

## CERTIFICATE OF SERVICE

This certifies that the foregoing was filed electronically on October 30, 2017.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

_____/s/ Joshua Engel _____
Joshua Adam Engel (Ohio No. 0075769)
(*pro hac vice*)