

NEW YORK   PENNSYLVANIA   NEW JERSEY   DELAWARE

Thomas S. D'Antonio
T. (585) 454-0715
F. (585) 231-1902
tdantonio@wardgreenberg.com

**VIA CM/ECF**

February 14, 2018

Hon. Thomas J. McAvoy
United States District Judge
United States District Court
  for the Northern District of New York
United States Courthouse and Federal Building
15 Henry Street
Binghamton, New York 13901

Re:   *John Doe v. Syracuse University*
         5:17-CV-0787 (TJM/ATB)

Dear Judge McAvoy:

This letter responds to plaintiff's "Notice of Supplemental of Authority" (Dkt. # 24) filed February 12, 2018, in further response to Syracuse University's motion to dismiss. That dismissal motion had been fully briefed and submitted for decision on December 11, 2017, and it is pending before the Court. To the extent the Court considers plaintiff's supplemental submission, which does not appear to be authorized by any local rule or Chambers Rule, the University provides this brief response demonstrating that the case is inapposite.

Specifically, plaintiff contends that *Doe v. Miami University*, 2018 U.S. App. LEXIS 3075 (6th Cir. 2018) is "relevant to the Court's consideration of the Motion to Dismiss." Dkt. # 24 at p. 1. Counsel further submits that the decision in *Miami* stands for the proposition that there was a "sufficient allegation of gender discrimination where [the University] 'had credible information that both students had potentially violated the University's sexual misconduct policy. [The University], however, chose not to pursue disciplinary action against the female student, but only against the male student.'" *Id.* at *34. Syracuse University strongly disagrees.

A key driver in *Miami* was the uncontested allegation that the male student participating in the sexual encounter (and ultimately found responsible by the University for engaging in sexual activity without the female student's consent) was intoxicated to such an extent that he could not even recall the events of the evening in question—and thus himself was incapable of consent. The Court summarized those allegations as follows:

> On the evening of September 13, 2014 [plaintiff John Doe] and his roommate attended 'a party where John Doe consumed approximately six beers' . . . John

WARD GREENBERG HELLER & REIDY LLP

Hon. Thomas J. McAvoy
February 14, 2018
Page 2

> then proceeded to 'a bar and drank at least two more beers and four shots of alcohol before leaving the bar in the early morning hours of September 14, 2014' . . . At this point, John was sufficiently intoxicated that he cannot clearly remember what happened for the remainder of the night . . . Based on text messages he later found on his cellphone, John knows that he called Jane and 'exchanged text messages with' her after he left the bar . . . . John apologized for whatever he may have done [with Jane later that evening], but informed Jane that he could not remember anything about his interactions with her the prior night.

*Miami*, 2018 U.S. App. LEXIS 3075 at *3-4 (citations to appellate Record omitted).

The exact *opposite* situation is alleged to have obtained in the case now before this Court. As the University noted in its Reply Memorandum, dated November 20, 2017:

> [John] Doe affirmatively alleges that the sexual activity at issue in this litigation between the two *was consensual*, "but rough." (Complaint, Dkt. # 1 at ¶ 36(b)(emphasis supplied)). [John] Doe does not allege that he failed to understand what was occurring during the early morning hours at issue, or that he had "blacked out" during that time, only later to learn that he in fact had engaged in sexual activity initiated by Jane [Roe]. That he may, the day after, have expressed regret about the nature of the *two* encounters in his bed does not mean that he was, "in the moment," incapacitated by alcohol consumption to such a degree that he did not, or could not, manifest consent to engage in sex those two times.

*See* Dkt. # 23 at p. 3. Unlike in *Miami*, this case does not involve a situation where the University "had credible information that both students had potentially violated the University's sexual misconduct policy" but "chose not to pursue disciplinary action against the female student, but only against the male student." It was the female student/reporting party—and the female student/reporting party *only*—who contended that she was incapable of consent due to intoxication.

Moreover, the portion of the *Miami* decision upon which plaintiff relies does not involve an analysis of the Title IX claim. Rather, the Sixth Circuit was analyzing an equal protection claim against Miami, a public university. *See* 2018 U.S. App. LEXIS 3075 at *30-36. Here, plaintiff has asserted no such claim against Syracuse, which in any event is a private university not subject to a constitutionally-based equal protection claim.

Finally, in modifying the district court's dismissal of the Title IX erroneous outcome claim in *Miami*, the circuit court found that a combination of several specific factual allegations—*not* asserted in this case—was sufficient to state an erroneous outcome claim in the Sixth Circuit. *See Miami*, 2018 U.S. App. LEXIS 3075 at *25-28. These allegations include:

Hon. Thomas J. McAvoy
February 14, 2018
Page 3

1. At Miami, every male student accused of sexual misconduct in the Fall 2013 and Spring 2014 semesters was found responsible for the alleged violation, and ninety percent of students found responsible there for sexual misconduct between 2011 and 2014 had male first names. *Id.* at *25.

2. The plaintiff in *Miami* incorporated an affidavit from an attorney who regularly represented University students in disciplinary proceedings, describing a pattern whereby the University pursued investigations of claims against male students, but did not do so where the complaint was against a female student. *Id.* at * 26.

3. The University pursued an investigation of John Doe in the specific case before the court in *Miami*, but did not investigate the conduct of his female accuser, even though the University had knowledge that John claimed to have been so highly intoxicated at the time of the encounter that he could recall nothing (and therefore, presumably, was incapable of consent). *Id.* at *26.

4. The female University official responsible for initially reviewing the evidence against John Doe and choosing to pursue disciplinary action "dominated" the hearing and sought "to deflate John Doe's credibility while inflating Jane Doe's credibility" . . . John Doe also described her body language during the hearing as "suggesting she believed John was lying." John Doe further alleged that she told him, "I'll bet you do this [i.e., sexually assault women] all the time." *Id.* at *10 (citations to appellate Record omitted).

5. The University was alleged to have felt pressure to zealously prosecute sexual misconduct claims against male students because it was defending a civil lawsuit in which a female student claimed she would not have been sexually assaulted if the University had expelled her attacker for his prior offenses. *Id.* at *27.

In the case before this Court, plaintiff has not alleged facts even remotely close to the specific allegations made by plaintiff in the *Miami* complaint. Absent this factual predicate, the analysis in *Miami* is inapposite, and plaintiff's reliance on *Miami* is misplaced. The Court should disregard plaintiff's "supplemental authority," or if it considers that authority should conclude it is both distinguishable and inapposite. The University's motion to dismiss should be granted.

Respectfully,

/s Thomas S. D'Antonio

Thomas S. D'Antonio (Bar No.: 510890)

cc:  Joshua A. Engel, Esq.