UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOHN DOE., | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) CASE NO. 5:17-CV-0787 |
| v. | ) (TJM/ATB) |
| | ) |
| SYRACUSE UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

***THE DAILY ORANGE'S* MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR RECONSIDERATION PURSUANT TO
<u>FEDERAL RULE OF CIVIL PROCEDURE 59(e)</u>**

**GREENBERG TRAURIG, LLP**

Katie L. Birchenough (NDNY 700106)
54 State Street, 6th Floor
Albany, New York 12207
Tel:  (518) 689-1400
Fax:  (518) 689-1499

*Attorneys Pro Bono for Intervenor
The Daily Orange*

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 2

POINT I – THE STANDARD FOR A RULE 59 (e) MOTION FOR
RECONSIDERATION ........................................................................................... 2

POINT II – THE DECISION ERRED IN CONTINUING TO WITHHOLD THE
NAMES OF THE MEMBERS OF THE UCB AND APPEALS BOARD ................................ 4

    A.   The Court Relied on Exhibit F in Determining the Parties' Summary Judgment
        Motions; the UCB and Appeals Board Members' Names and Gender Are
        Intrinsic to Plaintiff's Allegations of Discriminatory Bias................................................ 4

    B.   There is No Countervailing Privacy Interest in the UCB and Appeals
        Board Member Names Because This Information is Already in the Public Domain ..... 6

POINT III – THE DECISION FAILED TO ADDRESS TDO'S APPLICATION
FOR PUBLIC ACCESS TO THE PARTIES' LETTER BRIEFS ................................................ 8

CONCLUSION ...................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acquah v. City of Syracuse*,
    Case No. 5:18-CV-1378, 2020 U.S. Dist. LEXIS 54667 (N.D.N.Y. Mar. 30,
    2020) ........................................................................................................................3

*Bouzzi v. F&J Pine Rest., LLC*,
    841 F. Supp. 2d 635, 641 (E.D.N.Y. 2012) ...........................................................6

*Delaney v. Selsky*,
    899 F. Supp. 923 (N.D.N.Y. 1995).........................................................................3

*Gamble v. Deutsche Bank AG*,
    377 F.3d 133 (2d Cir. 2004)....................................................................................6

*Gucci Am., Inc. v. Guess?, Inc*.,
    No. 09-CV-4373 (SAS) (JLC), 2010 U.S. Dist. LEXIS 34834 *2 (S.D.N.Y.
    Apr. 8, 2010)*...................................................................................................6, 10

*Hens v. ClientLogic Operating Corp*.,
    Case No. 05-CV-381S, 2010 U.S. Dist. LEXIS 116635 (W.D.N.Y. Oct. 31,
    2010) ........................................................................................................................6

*Interchem Asia 2000 Pte. Ltd. v. Oceana Petrochemicals AG*,
    378 F. Supp. 2d 347 (S.D.N.Y. 2005).....................................................................4

*J.C. Penney Corp. v. Carousel Ctr. Co., L.P.*,
    Case No. 5:02-CV-1360, 2009 U.S. Dist. LEXIS 93111 (N.D.N.Y Oct. 6,
    2009) ........................................................................................................................2

*JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*,
    960 F. Supp. 2d 383 (E.D.N.Y. Feb. 28, 2013) ......................................................6

*Jingrong v. Chinese Anti-Cult World Alliance (CACWA)*,
    Case No. 2016 U.S. Dist. LEXIS 72034, 2016 U.S. Dist. LEXIS 72034
    (E.D.N.Y. June 2, 2016) ..........................................................................................9

*King Pharms., Inc. v. Eon Labs, Inc*.,
    04-CV-5540,2010 U.S. Dist. LEXIS 102703 (E.D.N.Y. Sept. 28, 2010) ...............9

*In re NBC Universal, In*c.,
    426 F.Supp. 2d 49 (E.D.N.Y. 2006) ........................................................................3

*In re Omnicom Group, Inc. Sec. Litig.*,
    Case No. 02 Civ. 4483 (RCC) (MHD), 2006 U.S. Dist. LEXIS 76782
    (S.D.N.Y. Oct. 23, 2006) ............................................................................8

*Romano v. Santander Holdings USA, Inc.*,
    15-CV-7387 (CM)(SN), 2018 U.S. Dist. LEXIS 94593 (S.D.N.Y. June 4,
    2018) ...........................................................................................................9

*Schiller v. City of New York*,
    04 Civ. 7922 (KMK) (JCF), 04 Civ. 7921 (KMK) (JCF), 2006 U.S. Dist.
    LEXIS 70479 (S.D.N.Y. Sept. 27, 2006)................................................8, 9

*United States v. Basciano*,
    Case No. 03-CR-929 (NGG), 05-CR-060 (NGG), 2008 U.S. Dist. LEXIS
    2313 (E.D.N.Y Jan. 11, 2008) ...................................................................3

*United States v. Gonzalez*,
    927 F. Supp. 768 (D. Del. 1996)..................................................................7

*VR Optics, LLC v. Peloton Interactive, LLC*,
    Case No. 16-CV-6392 (JPO), 2019 U.S. Dist. LEXIS 82183 (S.D.N.Y. May
    15, 2019) ......................................................................................................9

**Statutes**

20 U.S.C. §1681, *et seq.*..................................................................................1

**Rules**

Fed. R. Civ. P. 59(e) ..........................................................................1, 2, 3, 10

Local Rule 7.1(g) .............................................................................................3

**Other Authorities**

11 C. Wright et al., FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995) ........................3

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 59(e), Intervenor *The Daily Orange* ("*TDO*" or the "Newspaper") respectfully requests that the Court alter or amend the Decision & Order dated April 30, 2020 (the "Decision"), granting in part and denying in part *TDO's* Motion to unseal certain judicial documents in this case (Dkt. No. 72) (the "Motion"), including Exhibit F of Plaintiff's Motion for Summary Judgment (Dkt. No. 63-8) ("Exhibit F") and the parties' letter briefs addressing the sealing of Exhibit F (Dkt. Nos. 68 and 69) (the "Letter Briefs").

Respectfully, by ordering the redaction of the names of the members of the University Conduct Board ("UCB") and the University's Appeals Board ("Appeals Board") contained in Exhibit F, information the Court relied on in deciding the parties' summary judgment motions, the Decision is counter to common law and First Amendment public access requirements.

Based on the record, this information should have been made available to the public, as the names and gender of the UCB and Appeals Board members is intrinsic to Plaintiff's suit against the University, which sounds in discrimination on the basis of sex in violation of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §1681, *et seq*.  Specifically, the Decision addresses the parties' respective motions for summary judgment on Plaintiff's selective enforcement claim allegedly "driven by a bias against men cooked into the Title IX process by the Obama administration and by campus protests, as well as 'archaic' attitudes towards male sexuality that cast men as natural predators and women as natural victims." (Decision at 22) Further, the Decision granted the University summary judgment on Plaintiff's erroneous outcome claim, which required the consideration of "(1) articulable doubt as to the accuracy of the outcome of the disciplinary proceeding, and (2) that gender bias was a motivating factor behind the erroneous finding." (Decision at 33) (internal quotations omitted).  Thus, the gender of those who served on the UCB and the Appeals Board was necessarily implicated in the Court's disposition

of the parties' respective Rule 56 motions concerning Plaintiff's selective enforcement and erroneous outcome claims.

Moreover, the Decision made a clear error of law in overriding the public's access rights based on the privacy concerns of UCB and Appeals Board members when their identities are listed throughout the parties' filings and already in the public domain.  Any countervailing privacy interest ascribed to those University decision-makers is therefore attenuated to the point of extinction.

Finally, the Decision failed to address the Newspaper's application for public access to the Letter Briefs, which the Court considered and acknowledged in partially denying the Newspaper's motion for public access to Exhibit F.  We assume that this was nothing more than an oversight.  Nevertheless, we respectfully submit that the continued withholding of the Letter Briefs requires specific, on the record findings under the First Amendment and the balancing of competing considerations against the presumptive common law right of public access.  The absence of both any such findings and the requisite balancing of interests is an error of law.  Reconsideration of the Letter Briefs' sealing is warranted.

## ARGUMENT

### POINT I

### THE STANDARD FOR A RULE 59(e) MOTION FOR RECONSIDERATION

While the Federal Rules of Civil Procedure do not specifically contemplate a "motion for reconsideration," Rule 59(e) codified a trial court's "'inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment.'"  *J.C. Penney Corp. v. Carousel Ctr. Co., L.P.*, Case No. 5:02-CV-1360 (FJS/DEP), 2009 U.S. Dist. LEXIS 93111, *8 (N.D.N.Y Oct. 6, 2009) (granting defendant's motion for reconsideration of denial of its summary judgment motion)

quoting *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) (citations omitted); *see also* 11 C. Wright et al., FEDERAL PRACTICE AND PROCEDURE § 2810.1, at 124-25 (2d ed. 1995).

"Motions for reconsideration proceed in the Northern District of New York under Local Rule 7.1(g) of the Court's Local Rules of Practice" and allow reconsideration of "a previous ruling under three circumstances: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice." *Tanner v. Humphries*, 6:16-CV-1131 (GTS/TWD), 2019 U.S. Dist. LEXIS 31707, *4 (N.D.N.Y. Feb. 28, 2019) (granting defendants' motion for reconsideration, to correct its error of law related to statute of limitations) (internal citations omitted); *see also  Tanner v. Humphries*, 6:16-CV-1131 (GTS/TWD), 2019 U.S. Dist. LEXIS 86544, *4 (N.D.N.Y. May 23, 2019) (granting defendant's motion for reconsideration) (internal citations omitted).

Thus, a Rule 59(e) motion should be granted where, as here, "it becomes necessary to remedy a clear error of law or to prevent manifest injustice."  *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (granting defendant's motion for reconsideration) (citing *Doe v. New York City Dep't of Soc. Servs*., 709 F.2d 782, 789 (2d Cir. 1983)); *In re NBC Universal, In*c., 426 F.Supp. 2d 49, 58-59 (E.D.N.Y. 2006) (granting press-intervenor's motion for reconsideration allowing unredacted transcripts of certain recordings previously filed under seal with the court to be available to any member of the press or public); *United States v. Basciano*, Case No. 03-CR-929 (NGG), 05-CR-060 (NGG), 2008 U.S. Dist. LEXIS 2313 (E.D.N.Y Jan. 11, 2008) (granting motion for reconsideration in part, related to the unsealing of a previously filed motion's initial memorandum of law, opposition brief, and reply memorandum of law).  *Acquah v. City of Syracuse*, Case No. 5:18-CV-1378 (LEK/DEP), 2020 U.S. Dist. LEXIS 54667, *4 (N.D.N.Y. Mar.

30, 2020) (granting defendant's motion for reconsideration of *Monell* holding relating to the Chief of Police of the Syracuse Police Department); *Interchem Asia 2000 Pte. Ltd. v. Oceana Petrochemicals AG*, 378 F. Supp. 2d 347, 347 (S.D.N.Y. 2005) (granting motion for reconsideration to prevent manifest injustice and correct a legal error with respect to previously entered judgment).

## POINT II

### THE DECISION ERRED IN CONTINUING TO WITHHOLD THE NAMES OF THE MEMBERS OF THE UCB AND APPEALS BOARD

Respectfully, the Decision's partial denial of *TDO*'s Motion by mandating the redaction of the names of the UCB and Appeals Board members included in Exhibit F is a clear error of law, as the holding is contrary to controlling precedent applying the common law and First Amendment rights of public access.

**A.    The Court Relied on Exhibit F in Determining the Parties' Summary Judgment Motions; the UCB and Appeals Board Members' Names and Gender Are Intrinsic to Plaintiff's Allegations of Discriminatory Bias.**

The core premise of Plaintiff's claims against the University is that gender bias tainted the outcome of Plaintiff's administrative disciplinary proceeding, which found that he violated the University's student contact policy by sexually assaulting another student and resulted in his expulsion from the University (*see, e.g.,* Decision at 2, 8, 24).  The gender of the faculty and staff serving on the UCB and Appeals Board — who accepted the responsibility of reviewing the University's investigation, conducting an administrative hearing, rendering a decision, and subsequently providing administrative appellate review of that decision — is crucial to Plaintiff's allegations of discrimination.

While the Decision acknowledges that Exhibit F played a significant role in the Court's ultimate ruling on the parties' summary judgment motions, it stopped short of releasing the entire

document, determining redaction of the names of the UCB and Appeals Board members is proper under the circumstances (*see* Decision at 42 ("As this document has played a role in the Court's determination of the parties' summary judgment motions, the presumption in favor of public access to the document is a strong one") (citing *United States v. Amodeo*, 71 F.3d 1044, 1049-50 (2d Cir. 1995); *see also* Decision at 44 ("the Court finds that redacting the names of the panel members would serve the higher interest of the disciplinary process.")).

However, the Decision also acknowledges that the Court used the information in Exhibit F, "as a way of understanding the gender of those accused of misconduct, the University's role in bringing and prosecuting such cases, and the sorts of outcomes those cases had." (Decision at 44; *see also id*. at 41 (acknowledging that the document "identifies the investigator, the members of the three-member conduct board, and whether any party took an appeal [and] lists the members of the Appeals Board, if any, and the punishment assigned . . . The document names only investigators, UCB panel members, and appellate panel members."); *id*. at 4 ("[t]he Court's review of [Exhibit F] indicates that of the thirty-one sex-assault cases adjudicated during the period in question, thirty involved allegations by a woman that a man had assaulted her.").

In withholding the names of the UCB and the Appeals Board members, the Court proclaimed that "[t]he public will also be able to understand the evidentiary basis for the Court's decision without such information" (Decision at 44).  With all due respect, the public cannot evaluate the Court's reasoning on an informed basis without knowing the gender makeup of the UCB and Appeals Board.  In order to understand whether gender bias played a role in the decision-making of the University, the public should have access to the genders of the participants in the formal review processes: the complainant, the respondent, and the members constituting the bodies charged with ultimately determining the cases brought before them.

**B.      There is No Countervailing Privacy Interest in the UCB and Appeals Board Member Names Because This Information is Already in the Public Domain.**

The Decision supports its continued withholding of the names of the UCB and Appeals Board members on the basis that "faculty and staff would be less likely to volunteer to resolve cases — which are emotional and can become controversial — if they could not keep their names out of public discussion."[1] (Decision at 44)

However, it is conclusively established that "countervailing privacy interest . . . cannot defeat the strong presumption of public disclosure where the material . . . is already in the public domain." *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 397 (E.D.N.Y. Feb. 28, 2013) (holding that subject documents "are not sufficiently damaging to warrant suppression [and] are critical to the court's decision and subject to public inspection") (internal citations and quotations omitted); *see also Gucci Am., Inc. v. Guess?, Inc.*, No. 09-CV-4373 (SAS) (JLC), 2010 U.S. Dist. LEXIS 34834, *2 (S.D.N.Y. Apr. 8, 2010) (finding that, despite the Court's understanding of the plaintiff's desire "not to air publicly a sensitive personnel matter," a "generalized concern of adverse publicity is not a sufficiently compelling reason to outweigh the presumption of access" (internal quotation marks omitted)).  Thus, once information from court records is in the public domain, any privacy concerns evaporate, as the court does not have "the means to put the genie back [in the bottle]." *Gamble v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d

---

[1]    *TDO* has not had the benefit of being able to evaluate the University's argument in this regard, as its Letter Brief remains under seal.  In the absence of supporting affidavits from University staff, faculty and administrators demonstrating a reluctance or refusal to serve on the UCB and Appeals Boards without guaranteed privacy, this claim represents the type of conjecture repeatedly rejected by reviewing courts as insufficient to overcome the public's presumptive constitutional access right to judicial documents.  *See Hens v. ClientLogic Operating Corp*., Case No. 05-CV-381S, 2010 U.S. Dist. LEXIS 116635, *10 (W.D.N.Y. Oct. 31, 2010) (denying parties' Joint Motion for Protective Order or to Seal Settlement Agreement is denied where parties' "hypothetical" arguments in support of sealing were "speculative at best."); *Bouzzi v. F&J Pine Rest*., *LLC*, 841 F. Supp. 2d 635, 641 (E.D.N.Y. 2012) (denying defendant's motion to seal settlement documents finding defendant's "hypothetical concern about possible future employee action d[id] not outweigh the public's interest in access to judicial documents.").

Cir. 2004); *United States v. Gonzalez*, 927 F. Supp. 768, 778 (D. Del. 1996) ("In sum, the allegations . . . are already in the public domain [and t]he argument that disclosure of the [ ] documents will cause the level of damage to the privacy or reputations of third parties required by the Third Circuit appellate court before protection is warranted, is simply not convincing."). In short, there is no longer any privacy interest left to protect.

Here, the Decision fails to acknowledge that many of the faculty names are already in the public domain and accessible on the public docket. For instance, the names of the presiding Chairperson and Board Members of the UCB are publicly available on the Court's docket, appended as Exhibit "S" to Plaintiff's Motion for Summary Judgment (*see* Dkt. No. 63-21). Additionally, the names of the presiding Chairperson and Board Members of the Appeals Board were identified in the University Appeals Board Hearing Opinion appended as Exhibit "T" to Plaintiff's Motion for Summary Judgment (*see* Dkt. No. 63-22).

Further, *TDO* submits that the Court's crediting of the University's implausible concern that the public's creation of a "scorecard" would discourage faculty and staff membership on the UCB and Appeals Boards (Decision at 44)[2] misses the mark. Even indulging the speculative notion that such an event would come to pass, a pattern of bias, favoritism, or perhaps even abuse

---

[2]     The claim that an accurate tally could be made is belied by the ever-rotating nature of the UCB and Appeals Board members (*see, e.g.*, Student Conduct System Handbook 2016-2017, Plaintiff's Motion for Summary Judgment, Exhibit G, at p. 25, R. 10.7 (Dkt. No. 63-9) ("The University Conduct Board is comprised of three (3) members who are full-time faculty or staff from Syracuse University. Members of the University Conduct Board are appointed by the Senior Vice President and Dean of Student Affairs from a pool of at least ten (10) members recommended by the University community"); *id.* at 34, R. 12.5 ("The University Appeals Board is comprised of three (3) members who are full-time faculty or staff from Syracuse University. Members of the University Appeals Board are appointed by the Senior Vice President and Dean of Student Affairs from a pool of at least ten (10) members recommended by the University community"); *see also* Deposition of Pam Peter, Plaintiff's Motion for Summary Judgment, Exhibit H, at 16-17 (Dkt. No. 63-10) ("We usually have about five board members who will hold their calendar for a specific date. And then when we get notice that or we know we're scheduling a hearing, we will choose three of those five members, or, if there's only three, it's those three, board members to serve on a hearing")).

that emerged from such a tabulation would promote the integrity of the University's process for adjudicating sexual assault and harassment complaints.

**POINT III**

**THE DECISION FAILED TO ADDRESS TDO'S APPLICATION
FOR PUBLIC ACCESS TO THE PARTIES' LETTER BRIEFS**

The Decision correctly acknowledges the Newspaper's request for access to the parties' Letter Briefs (Decision at 38) ("The newspaper also requests that the Court unseal letters from the parties requesting that the document remain sealed.") but fails to address their continued sealing. This omission is an error of law and should be reconsidered.  In particular, given the Decision's reliance on the University's Letter Brief, the withholding of the respective Letter Briefs should be lifted so that the public can understand the parties' legal arguments and the Court's consideration thereof.

*TDO* assumes that the Decision's failure to order public access to the Letter Briefs is an administrative oversight. Respectfully, however, without on-the-record findings demonstrating that continued sealing is necessary to protect a compelling interest and is narrowly tailored to serve that interest, the withholding of the Letter Briefs is an error of First Amendment law which must be reconsidered.[3]  Upon reconsideration, the Newspaper respectfully requests the Court unseal the parties' Letter Briefs.

---

[3]    Like Exhibit F, the parties' Letter Briefs assisted the Court in the performance of its judicial function and were useful in the judicial process.  They therefore qualify as judicial documents subject to presumptive disclosure under the common law right of access.  *In re Omnicom Group, Inc. Sec, Litig.*, Case No. 02 Civ. 4483 (RCC) (MHD), 2006 U.S. Dist. LEXIS 76782, *5 (S.D.N.Y. Oct. 23, 2006) (holding "[i]n this case the target of defendants sealing application is a series of letter briefs with accompanying exhibits, and these certainly qualify as judicial documents"); *Schiller v. City of New York*, 04 Civ. 7922 (KMK) (JCF), 04 Civ. 7921 (KMK) (JCF), 2006 U.S. Dist. LEXIS 70479, *5 (S.D.N.Y. Sept. 27, 2006) ("Documents created by or at the behest of counsel and presented to a court in order to sway a judicial decision are judicial documents that trigger the presumption of public access")

8

The Letter Briefs are subject to the presumptive rights of public access because the legal arguments they presented were evaluated by the Court in determining whether Exhibit F should be released. *Jingrong v. Chinese Anti-Cult World Alliance (CACWA)*, Case No. 2016 U.S. Dist. LEXIS 72034, 2016 U.S. Dist. LEXIS 72034, *5 (E.D.N.Y. June 2, 2016) (granting public access to letter briefs because "for all practical purposes, the disputed letters contain almost exclusively the legal arguments of the parties"); *King Pharms., Inc. v. Eon Labs, Inc*., 04-CV-5540, 2010 U.S. Dist. LEXIS 102703, * 17 (E.D.N.Y. Sept. 28, 2010) ("Legal briefs used by parties moving for, or opposing a dispositive motion fall on the far end of the continuum and are subject to the strongest presumption").

There is no reason for allowing to remain secret the legal arguments presented by the parties to the Court relative to Exhibit F's sealing.  The blanket withholding of the Letter Briefs violates *TDO*'s and the public's rights of access under the First Amendment and common law. *Schiller v. City of New York*, 04 Civ. 7922, 04 Civ. 792, 2006 U.S. Dist. LEXIS 70479, *16 (S.D.N.Y. Sept. 27, 2006) ("For similar reasons, the First Amendment right of access attaches also in this case [because l]egal memoranda have historically been open to the press and general public and public access plays a significant positive role in monitoring arguments over the sealing of court records") (internal quotations omitted); *VR Optics, LLC v. Peloton Interactive, LLC*, Case No. 16-CV-6392 (JPO), 2019 U.S. Dist. LEXIS 82183, *26 (S.D.N.Y. May 15, 2019) (denying parties' motions for leave to file portions of the motion-to-compel briefing under seal where the presumption of access under both the common law and the First Amendment attached to the briefs and where the parties failed to show any countervailing factors in the common law framework or 'higher values' under the First Amendment framework); *Romano v. Santander Holdings USA, Inc*., 15-CV-7387 (CM)(SN), 2018 U.S. Dist. LEXIS 94593, *18 (S.D.N.Y. June 4, 2018) ("By filing

their motion to enforce the Agreement, Defendants asked the Court to act upon that document and use its judicial power to effectuate it. The parties have also filed briefs and presented various communications and draft agreements to the Court in order to sway its decisions on the motion. The Court has been asked to rely upon these documents in determining the parties' substantive legal rights in this matter, and thus, a strong presumption of public access attaches."); *Gucci Am., Inc.*, 2010 U.S. Dist. LEXIS 34834, at *2 (denying application to seal documents submitted "in support of a protective order against the disclosure of the purportedly privileged communications of Gucci's in-house counsel").

## <u>CONCLUSION</u>

Based on the foregoing reasons and authority, *TDO* respectfully requests that the Court grant its motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e), vacate its order redacting the names of the members of Syracuse University's UCB and Appeals Board by authorizing access to such information, and grant immediate public access to the parties' Letter Briefs, together with such other and further relief as the Court deems just and proper.

DATED:   May 13, 2020

**GREENBERG TRAURIG, LLP**

By:   /s/ *Katie L. Birchenough*
      Katie L. Birchenough (NDNY 700106)
      54 State Street, 6th Floor
      Albany, New York 12207
      Tel:  518.689.1400
      Fax:  518.689.1499
      Email:  birchenoughk@gtlaw.com

*Attorneys Pro Bono for Intervenor*
*The Daily Orange*

**CERTIFICATION**

I hereby certify that on this 13th day of May, 2020 I electronically filed and served this document through the electronic filing system.


*/s/ Katie L. Birchenough*
Katie L. Birchenough (NDNY 700106)

*ACTIVE 50419087v2*